IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| MITCHELL DARNELL EADS, | ) |
| Plaintiff, | ) ) |
| v. | ) ) No. 1:24-cv-01076-JDB-tmp |
| FRANK STRADA, *et al.*, | ) ) |
| Defendants. | ) ) |

ORDER DISMISSING COMPLAINT WITH PREJUDICE IN PART AND WITHOUT PREJUDICE IN PART,
GRANTING LEAVE TO AMEND CLAIMS DISMISSED WITHOUT PREJUDICE,
AND
DENYING REQUEST TO PRESERVE EVIDENCE

INTRODUCTION

On January 31, 2024, the Plaintiff, Mitchell Darnell Eads, Tennessee Department of Correction ("TDOC") prisoner number 00243729, who is incarcerated at the Whiteville Correctional Facility ("WCFA") in Whiteville, Tennessee, filed a pro se civil complaint pursuant to 42 U.S.C. § 1983 (Docket Entry ("D.E.") 1) along with a motion for leave to proceed in forma pauperis ("IFP") (D.E. 2) in the United States District Court for the Middle District of Tennessee. On April 2, 2024, the Middle District granted Eads leave to proceed IFP; assessed the $350 filing fee in accordance with the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915; and transferred the case to this Court for further proceedings. (D.E. 6.)

The complaint is now before the Court for the purpose of screening pursuant to the PLRA. The pleading asserts violations of the First, Fourth, Eighth, and Fourteenth Amendments. For the

reasons explained below, the complaint is DISMISSED and Plaintiff is GRANTED leave to amend certain claims dismissed without prejudice.

FACTUAL ALLEGATIONS.

On December 8, 2022, Eads "executed a notarized sworn legal notice and demand . . . put[ting] on notice all Tennessee officials, agents, employees, contractors and vendors thereof that any violation of [Plaintiff's] rights from the date of the notice . . . would be immediately enforceable by a two million . . . dollar judg[]ment in federal United States District Court."[1] (D.E. 1 at PageID 8-9.) The demand was mailed on December 27, 2022, and received by Tennessee Secretary of State Tre Hargett on January 19, 2023.

On January 28, 2023, six inmates entered Plaintiff's housing unit "displaying weapons (knives) made of steel." (*Id.* at PageID 9.) He was "struck in [his] right eye/cheek/orbital socket" and subdued by the attackers. (*Id.*) He "was held on the ground and assaulted (punched, kicked[,] and threatened with stabbing and scalding with hot water and beatings with belts)." (*Id.*) The men threatened to stab and kill him if he did not let them take his personal property. After he refused, the inmates "rummaged through [his] belongings and found [his] fiancée's telephone number." (*Id.*) One of the men "produced a cellphone," called Eads' fiancée, and threatened to murder Plaintiff if she did not send him $1,000 via CashApp. (*Id.*) Eads avers that the fiancée transferred $500 on CashApp that evening and that the attackers then left. The inmates extorted another $300 on February 1, 2023, and $100 more two days later.

On February 2, 2023, Plaintiff submitted an emergency sick call. His injuries were documented, and an x-ray ordered. The x-ray was completed the next day and showed that his

---

[1] The inmate has attached a copy of the demand to the complaint. (D.E. 1-1.) He indicates that the document is "a contract in admiralty jurisdiction." (*Id.* at PageID 20.)

right orbital lobe had three fractures.  A few days thereafter, WCFA Nurse Practitioner Tasma Robertson told him that his x-ray was "good." (*Id.*)  He suffered a hemorrhage to his right eye, which "swelled completely shut." (*Id.* at PageID 8.)  He still has blurred vision in the right eye and believes that he suffers from Post-Traumatic Stress Disorder ("PTSD") as a result of the incident.

On February 8, 2023, Eads received three pieces of what he refers to as legal mail at WCFA, consisting of a request to postpone filing fees and order, a request not to pay fees for appeal, and a writ of certiorari "to be filed in a contested case Mitchell Eads v. Tennessee Board of Paroles in Davidson County Tennessee at Nashville." (*Id.* at PageID 9-10.)  On February 23, 2023, Mailroom Officer Lisa West notified him that his legal mail was being denied "due to some unknown substance on the documents without requesting or ordering any testing or forensic examination of the documents." (*Id.* at PageID 10.)

On March 17, 2023, Plaintiff and his cell were searched by the WCFA Special Operations Response Team "without a completed CR-2056 Authorization of Probable Cause by Warden Chance Leeds." (*Id.*)  He maintains that the search was retaliatory "and performed for the specific purpose of deterring [him] from accessing the courts relative to the claims in this petition." (*Id.*)  On April 4, 2023, he used the inmate telephone "while performing [his] commercial cleaning detail . . . to call [his] power of attorney and legal advisor." (*Id.*)  He "was terminated from [his] work detail as a result of [his] phone call." (*Id.*)  He insists that he will continue to be retaliated against by WCFA/CoreCivic agents "in violation of [his] legal notice and demand and [his] guaranteed right to seek redress in United States district court." (*Id.*)

Plaintiff sues the following individuals in their official and individual capacities:  (1) TDOC Commissioner Frank Strada, (2) former WCFA Warden Leeds, (3) WCFA Unit Manager

Kumetris Bonner, (4) WCFA Case Manager Justin Grant, (5) Robertson, (6) West, and (7) WCFA Healthcare Services Administrator Leslie Norfolk.  The Court refers to Leeds, Bonner, Grant, Robertson, West, and Norfolk collectively as the "CoreCivic Defendants."  Eads seeks $2 million in nominal damages, $2 million in punitive damages, and $2 million in compensatory damages "per occur[r]ence."  (*Id.* at PageID 8.)  He also asks that the Court order the Defendants "to immediately archive and preserve all video footage from both cameras in WCFA F-unit A-pod from January 28, 2023[,] from 5 p.m. to 6 p.m. respectively."  (*Id.*)

SCREENING

Legal Standard.

The Court must screen prisoner complaints and dismiss any complaint, or any portion of it, if the complaint—

   (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

   (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint states a claim on which relief may be granted, the Court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *See Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).  Under those standards, the Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681).  The Court does not assume that conclusory allegations are true, because they are not "factual" and all legal conclusions in a complaint "must be supported by factual allegations."  *Iqbal*, 556 U.S. at 679.  Federal Rule of Civil Procedure 8 provides

guidance on this issue. Although Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), it also requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief," *Twombly*, 550 U.S. at 555 n.3.

Courts screening cases accord more deference to pro se complaints than to those drafted by lawyers. *See Williams*, 631 F.3d at 383 ("Pro se complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed."). Pro se litigants are not, however, exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612-13 (6th Cir. 2011) (affirming dismissal of pro se complaint for failure to comply with unique pleading requirements and stating a court cannot create a claim which a plaintiff has not spelled out in his pleading).

Requirements To State a Claim Under § 1983.

To state a claim under the statute, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States, and (2) that a defendant caused the constitutional harm while acting under color of state law. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150 (1970).

ANALYSIS

Official Capacity Claims.

The prisoner sues all Defendants in their official and individual capacities. The official capacity claims are treated as claims against Strada's and the CoreCivic Defendants' employers. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Plaintiff avers that Strada is employed by the TDOC. Therefore, the official capacity claims against this Defendant are treated as claims

against the State of Tennessee.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  In *Will*, the United States Supreme Court "remove[d] persons acting in their official capacities on behalf of the State from the scope of § 1983 altogether, thereby eliminating the need for a court to undertake any sort of immunity analysis with respect to such a claim[.]"  *Gean v. Hattaway*, 330 F.3d 758, 766-67 (6th Cir. 2003).  Thus, Plaintiff's official capacity claims against Strada are DISMISSED WITH PREJUDICE for failure to state a claim to relief as a matter of law.

      The official capacity claims against the CoreCivic Defendants are construed as claims against their employer—CoreCivic.  *See* https://www.tn.gov/correction/state-prisons/state-prison-list/whiteville-correctional-facility.html. (last accessed Jan. 13, 2026) ("WCFA is managed by CoreCivic, a private corrections management firm.").  "A private corporation that performs the traditional state function of operating a prison acts under the color of state law for purposes of § 1983."  *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)).  The standards for assessing municipal liability claims are utilized in suits against private corporations that operate prisons or provide medical care to prisoners.  *See Estate of Leeper v. CoreCivic, Inc.*, 797 F. Supp. 3d 797, 806 (M.D. Tenn. 2025).  CoreCivic "cannot be held liable under a theory of respondeat superior."  *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011).  To prevail on a § 1983 claim against CoreCivic, Eads "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights."  *See id.*

      In this case, Plaintiff does not allege any facts suggesting that the CoreCivic Defendants acted pursuant to a company policy or custom that deprived him of a constitutional right.  Nowhere in the complaint does he set forth facts alleging that a CoreCivic policy or custom was the "moving force" behind the alleged deprivations.  Accordingly, the official capacity claims against the

CoreCivic Defendants are DISMISSED WITHOUT PREJUDICE for failure to state a claim for relief.

Individual Capacity Claims.

*Claims Against Defendants Strada, Leeds, Bonner, Grant, and Norfolk*

Plaintiff fails to allege claims for relief against these Defendants in their individual capacities. Liability under § 1983 in a defendant's individual capacity must be predicated upon some showing of direct, active participation in the alleged misconduct. *See Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). As noted above, Section 1983 will not support a claim based upon a theory of respondeat superior. *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Bellamy*, 729 F.2d at 421. A plaintiff must allege that a defendant official was personally involved in the unconstitutional activity of a subordinate to state a claim against such a defendant. *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005). A "failure to supervise, control, or train [an] individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (internal quotation marks omitted). "At a minimum[,] a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Hays v. Jefferson Cnty., Kentucky*, 668 F.2d 869, 874 (6th Cir. 1982).

Eads sues Strada based on his supervisory role as TDOC Commissioner and Leeds because of his supervisory role as WCFA Warden. Bonner, Grant, and Norfolk hold supervisory roles over various departments at WCFA. Plaintiff does not, however, allege any facts suggesting any personal involvement by these Defendants in the incidents complained of. Strada, Bonner, Grant, and Norfolk are not referenced in the body of the pleading. While Eads does mention Leeds, he

does so merely in alleging that he and his cell were searched without an authorization of probable cause signed by him. Plaintiff simply fails to aver that any action or inaction by these individuals caused him harm. Nor does he aver facts suggesting that they "authorized, approved, or knowingly acquiesced" in any unconstitutional conduct. *See id.* at 874.

When a complaint fails to allege any action by a defendant, it necessarily fails to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) ("The court is not required to accept non-specific factual allegations and inferences or unwarranted legal conclusions."). "Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983." *Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57 (1978)). Thus, the individual capacity claims against Defendants Strada, Leeds, Bonner, Grant, and Norfolk are DISMISSED WITHOUT PREJUDICE for failure to state a claim for relief.

*Claims Against Defendant Robertson*

Eads only mentions Robertson in connection with the x-ray he received on February 3, 2023. As noted above, he asserts that, even though the x-ray showed that his right orbital lobe was fractured in three places, Robertson told him the x-ray was "good." (D.E. 1 at PageID 9.) He submits that, while treatment provided by a "Nurse Irvin" was "done with exceptional skill, [his] treatment by [Robertson] was not." (*Id.* at PageID 8.)

These allegations amount to a claim of deliberate indifference to his serious medical needs, which invokes the Eighth Amendment's prohibition of cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A constitutional claim for denial of medical care has objective and subjective components." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th

8

Cir. 2004) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  The objective component requires that a prisoner have a "sufficiently serious" medical need.  *Id.* (quoting *Farmer*, 511 U.S. at 834).  "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Id.* at 897 (internal quotation marks omitted).  The subjective component mandates that jail officials acted with a "sufficiently culpable state of mind."  *Farmer*, 511 U.S. at 834.  "[D]eliberate indifference describes a state of mind more blameworthy than negligence."  *Id.* at 835.  The prison official must subjectively know of an excessive risk of harm to an inmate's health or safety and disregard that risk.  *Id.* at 837.

Here, the prisoner has failed to allege facts showing that Robertson "possessed a sufficiently culpable state of mind in denying medical care."  *See Winkler v. Madison Cnty.*, 893 F.3d 877, 891 (6th Cir. 2018).  He offers no facts about the type of care provided by Robertson, and he readily admits that he received care from Nurse Irvin.  While his allegations at best show dissatisfaction with Robertson's response to the x-ray, he fails to allege how his medical treatment was deficient or that this Defendant purposefully denied him medical care.  Disagreement about a plaintiff's medical treatment or a pleader's "desire for additional or different treatment" does not amount to a constitutional violation.  *See Woodcock v. Correct Care Sols.*, 861 F. App'x 654, 660 (6th Cir. 2021) (citation omitted).  Moreover, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."  *Estelle*, 429 U.S. at 106.

To the extent Eads alleges that he has PTSD, that allegation is conclusory.  He provides no facts regarding a diagnosis, his symptoms, the medical care required, or any attempts to obtain care for his PTSD.  Nor does he allege facts that would show Robertson was involved with or responsible for obtaining care for PTSD.

For these reasons, Plaintiff's Eighth Amendment claim against Robertson for deliberate indifference to his serious medical needs is DISMISSED WITHOUT PREJUDICE for failure to allege facts stating a claim to relief.

*Claims Against Defendant West*

As stated herein, Eads alleges that, on February 23, 2023, West provided notice that the three legal documents he had received on February 8, 2023, "were being denied due to some unknown substance on the documents without requesting or ordering any testing or forensic examination of the documents." (D.E. 1 at PageID 9-10.) This allegation invokes First Amendment claims regarding his right to receive legal mail and access the courts, as well as his Fourteenth Amendment procedural due process rights.

The First Amendment protects an inmate's right to receive mail, including legal mail. *See Muhammad v. Pitcher*, 35 F.3d 1081, 1084-85 (6th Cir. 1994) (citing *Knop v. Johnson*, 977 F.2d 966, 1012 (6th Cir. 1992)). "The determination of whether particular kinds of correspondence qualify for the constitutional protection accorded a prisoner's 'legal mail' is a question of law properly decided by the court[.]" *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003). Courts have held that a prisoner's right to receive legal mail without interference from prison personnel is entitled to somewhat greater protection than the right to nonlegal mail because legal mail has significant impact on the prisoner's access to the courts. *See Parrish v. Johnson*, 800 F.2d 600, 603-04 (6th Cir. 1986).

Plaintiff alleges that West denied him receipt of three pieces of legal mail that were received on one occasion. An "isolated interference" with a prisoner's mail does not rise to the level of a First Amendment violation. *See Johnson v. Wilkinson*, No. 98-3866, 2000 WL 1175519, at *2 (6th Cir. Aug. 11, 2000) (citing *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997); *see*

10

*also Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (citing *Johnson*). The Sixth Circuit has relied upon *Colvin* to confirm that a single incident of tampering with legal mail "does not rise to the level of a constitutional violation." *See Smith v. Goostrey*, No. 23-1025, 2023 WL 5024659, at *3 (6th Cir. Aug. 4, 2023) (citing *Colvin*).

West's rejection of Eads' legal mail on one occasion appears to have been an isolated occurrence. Accordingly, the First Amendment claim against West regarding the rejection of Plaintiff's legal mail is DISMISSED WITHOUT PREJUDICE for failure to state a claim for relief.

Prisoners have a well-established constitutional right of access to the courts, *see Lewis v. Casey*, 518 U.S. 343, 350 (1996), which "extends to direct appeals, habeas corpus applications, and civil rights claims only," *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc) (per curiam). To pursue a First Amendment claim for denial of access to the courts, "a prisoner must show prison officials' conduct inflicted an 'actual injury,' i.e., that the conduct hindered his efforts to pursue a nonfrivolous legal claim." *Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001); *see Thaddeus-X*, 175 F.3d at 394. This claim has four elements: "(1) a non-frivolous underlying claim; (2) obstructive actions by state actors; (3) substantial prejudice to the underlying claim that cannot be remedied by the . . . court; and (4) a request for relief which is now otherwise unattainable." *Jackson v. City of Cleveland*, 64 F.4th 736, 746 (6th Cir. 2023) (cleaned up) (citation omitted), *reh'g denied*, 2023 WL 3806460 (6th Cir. May 10, 2023).

Eads does not allege facts demonstrating that he was pursuing a non-frivolous legal claim. Nor does he describe the nature of the underlying claim. He avers only that West notified him that he would not be receiving certain documents. Moreover, Plaintiff does not set forth facts suggesting that, by denying this mail, West obstructed his pursuit of a legal claim, that he suffered substantial prejudice to an underlying claim, or that he sought relief that is now otherwise

11

unattainable due to her denial of the mail. For these reasons, a First Amendment claim of denial of access to the courts against Defendant West is DISMISSED WITHOUT PREJUDICE for failure to allege facts stating a claim to relief.

The Court also construes Eads' complaint to assert a Fourteenth Amendment procedural due process claim against West regarding the withholding of his mail. Plaintiff has a liberty interest in receiving his mail. *See Procunier v. Martinez*, 416 U.S. 396, 413 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989). Prisoners "are entitled to the minimum procedural safeguards of *Procunier*" with respect to a procedural due process claim. *See Aguilar v. Napa Cnty. Bd. of Supervisor*, Case No. 23-cv-05313 NC (PR), 2025 WL 2775156, at *14 (N.D. Cal. Aug. 27, 2025), *appeal filed* (No. 25-6035) (9th Cir. Sept. 25, 2025). Accordingly, "the 'minimum procedural safeguards' to which a prisoner is entitled are: (1) notice that the item was seized; (2) a reasonable opportunity to protest the decision; and (3) an opportunity to appeal to a prison official other than the one who made the initial decision to exclude the item." *Id.* (citing *Procunier*, 416 U.S. at 418-19).

West notified Eads that his mail was rejected "due to some unknown substance on the documents." (D.E. 1 at PageID 10.) According to Plaintiff, she made this decision 'without requesting or ordering any testing or forensic examination of the documents." (*Id.*) He fails, however, to allege any facts suggesting that he was not provided a reasonable opportunity to protest the decision or appeal to a different prison official. As he has not alleged sufficient facts to demonstrate a procedural due process claim, Plaintiff's Fourteenth Amendment procedural due process claim against West is DISMISSED WITHOUT PREJUDICE for failure to allege facts stating a claim to relief.

12

AMENDMENT UNDER THE PLRA

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *Lucas v. Chalk*, 785 F. App'x 288, 291 (6th Cir. 2019) (citing *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("we hold, like every other circuit to have reached the issue, that under Rule 15(a) [of the Federal Rules of Civil Procedure] a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA")); *see also Brown v. Rhode Island*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required, however, where a deficiency cannot be cured. *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that . . . amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that *sua sponte* dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts").

The Court GRANTS Eads leave to amend the claims dismissed without prejudice under the guidelines set forth below.

CONCLUSION

For the reasons set forth above:

A. The official capacity claims against Defendant Strada are DISMISSED WITH PREJUDICE for failure to state a claim to relief as a matter of law.

13

  B. The remaining claims in the complaint are DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief.

  C. Plaintiff's request to order the preservation of video footage is DENIED subject to refiling if the case proceeds.

  D. Leave to amend the claims dismissed without prejudice is GRANTED. Amended claims must be filed within twenty-one days after the date of this order. An amended pleading must comply with the Federal Rules of Civil Procedure, including but not limited to Rule 8's requirement of a short and plain statement of Plaintiff's claims. An amended complaint supersedes the original complaint and must be complete in itself without reference to the prior pleadings. Eads must sign the amended complaint, and the text of the amended complaint must allege sufficient facts to support each claim without reference to any extraneous document. Any exhibits must be identified by number in the text of the amended pleading and must be attached to the complaint. All claims alleged in an amended complaint must arise from the facts averred in the original complaint. Each claim for relief must be stated in a separate count and must identify each defendant sued on that count. If Plaintiff fails to comply with Rule 8 and the Court's instructions for pleading amended claims, the Court will dismiss improperly pleaded amended claims with prejudice.

  E. If Plaintiff fails to file an amended complaint within the time specified herein, the Court will dismiss the case with prejudice and enter judgment. The Court recommends that any such dismissal should be treated as a strike pursuant to 28 U.S.C. § 1915(g). *See Simons v. Washington*, 996 F.3d 350, 353 (6th Cir. 2021).

  F. If Plaintiff is transferred to a different prison or released, he is ORDERED to notify the Court immediately, in writing, of his change of address. If he fails to abide by this or any other

requirements of this order, the Court may impose appropriate sanctions, up to and including dismissal of this action, without additional notice or hearing by the Court.

IT IS SO ORDERED this 15th day of January 2026.

s/ J. DANIEL BREEN<br>UNITED STATES DISTRICT JUDGE